Joseph N. Froehlich (JF 5221)
LOCKE LORD LLP
200 Vesey Street, 20th Floor
New York, NY  10281-2101
(212) 415-8600
*Attorneys for Petitioners*
*Certain Underwriting Members at Lloyd's, London*
*Subscribing to Treaty No. 0272/04*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CERTAIN UNDERWRITING MEMBERS AT LLOYD'S, LONDON SUBSCRIBING TO TREATY NO. 0272/04, | Case No. _____ Civ. _____(   ) |
| Petitioners | |
| -against- | **PETITION TO VACATE OR MODIFY ARBITRATION AWARD** _____ |
| INSURANCE COMPANY OF THE AMERICAS, | |
| Respondent. | |

Pursuant to Sections 10 and 11 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§10 and 11, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), implemented by 9 U.S.C. § 201, *et seq.*, Certain Underwriting Members of Lloyd's, London Subscribing to Treaty No. 0272/04 ("Petitioners"), by their attorneys, Locke Lord LLP, petition this Court for an Order vacating or, in the alternative, modifying an arbitration award by a three-member arbitration panel (the "Panel") on October 19, 2015 (the "Award").  In support hereof, Petitioners respectfully state as follows:

## PRELIMINARY STATEMENT

1.     The instant motion arises out of a complex reinsurance arbitration brought by Insurance Company of the Americas ("ICA") to resolve coverage issues relating to two underlying workers' compensation claims.

2.     The dispute over coverage which gave to rise to said arbitration only involved ICA and Lloyd's underwriters who subscribed to Agreement No. 0274/04 comprising of: (1) first-layer excess coverage with limits of $1.5 million excess of $1 million; and (2) second-layer excess coverage with limits of $2.5 million excess of $2.5 million (collectively, the "First and Second Layers").

3.     Petitioners are those Underwriters (the "Third-Layer Underwriters") subscribing to a separate third-layer excess reinsurance treaty (Agreement No. 0272/04) with limits of $5 million excess of $5 million (the "Treaty" or "Third Layer").  A true and correct copy of the Treaty wordings is attached hereto as Exhibit "A".

4.     The Third-Layer Underwriters were never given proper notice of the underlying losses, nor properly served with ICA's demand for arbitration.  In fact, the Third-Layer Underwriters were never properly notified of the arbitration until after the issuance of the Award, at which time they took immediate steps to rectify the situation, including submitted a letter to the Panel objecting to the Award.  To date, the Panel has not ruled on these objections.

5.     ICA is a sophisticated insurer who purposely chose to place reinsurance in the London Market.  It knew, or certainly should have known, how to effectuate proper service and notice on the Third Layer in accordance with the Treaty, Lloyd's custom, and the law, but failed to do so.

- 2 -

6.      The Treaty specifically sets forth two such methods of service.  There is an "Intermediaries" clause (Article 27) which allows for communications between the parties to be made through a designated intermediary, Gresham Insurance Brokers Limited ("Gresham"). However, Gresham had been defunct for over *four years* before ICA's arbitration demand was made.  ICA was aware of Gresham's insolvency, yet failed to amend the Treaty or otherwise designate a new intermediary or broker.

7.      ICA also could have invoked the "Service of Suit" clause (Article 26), which designates agents for service of process upon Petitioners, but chose not do so.

8.      Absent either means of service cited above, under the law as well as Lloyd's custom and practice, a reinsured may still be allowed to effectuate proper service without having to serve each underwriter individually so long as it is made upon the lead underwriter, in this case, Faraday Syndicate 435 ("Faraday"), or one its nominated agents. However, there is no evidence that ICA conducted any due diligence to ascertain the identity of the lead for the Third Layer, and certainly never contacted it about the arbitration.

9.      Because of ICA's failure to effectuate proper service of its arbitration demand, Petitioners have been substantially prejudiced and deprived of their due process rights to participate fully and fairly in the arbitration.

10.     Specifically, the Third-Layer Underwriters lacked any opportunity to participate in the instant dispute in any meaningful way, including, but certainly not limited to: (1) selecting a party-appointed arbitrator; (2) agreeing to the retention of outside counsel; (3) raising separate third layer-specific defenses; or (4) offering any additional evidence supporting the position that there was no coverage for the underlying losses.  *See* Affidavit of Gerald M. Lynch of Faraday ("Faraday Aff."), ¶ 9, attached hereto as Exhibit "B".

Case 1:16-cv-00374-VSB   Document 1   Filed 01/18/16   Page 4 of 12

11.     In addition, arbitration was demanded against the Third-Layer Underwriters "should the Claim rise to that level."  A copy of the arbitration demand is attached hereto as Exhibit "C".  In other words, ICA's demand for arbitration against the Third-Layer Underwriters was contingent upon one of the underlying claims impacting the $5 million excess of $5 million layer.  To date, upon information and belief, ICA's claim for alleged damages for the claim has not reached the Third Layer.  Accordingly, the Award as it pertains to the Third-Layer Underwriters is premature.

12.     Because the Panel issued an Award against a party and involving a matter not properly before them in the first instance, and because the Third-Layer Underwriters have been completely deprived of a full and fair opportunity to present their case, the Award should be vacated or modified as it pertains to the Third-Layer Underwriters.

13.     In the alternative, if the Court finds that the Third-Layer Underwriters are bound by the Award, then the Third-Layer Underwriters hereby join in and adopt the arguments set forth in the Petition to Vacate Arbitration Award filed by the First and Second Layer Underwriters in the related proceedings in this District entitled *Certain Underwriting Members at Lloyd's of London v. Insurance Company of the Americas*, No. 1:16-CV-00323.[1]

## PARTIES

14.     ICA is an insurance company licensed in Florida with administrative offices in Lake Mary, Florida.  ICA is primarily engaged in providing workers' compensation insurance.

15.     The Third-Layer Underwriters are foreign reinsurers domiciled in the United Kingdom or other foreign states with their principal places of business in London, England.  The lead Underwriter, Faraday, is located at Corn Exchange, 55 Mark Lane, London EC3R 7NE.

---

[1] A motion to consolidate these proceedings will subsequently be filed.

- 4 -

## JURISDICTION AND VENUE

16.     The jurisdiction of this Court is based on 9 U.S.C. § 203 and 28 U.S.C. § 1331 because the case arises under the laws and treaties of the United States, including the Convention and FAA.

17.     A court sitting in the district in which an arbitration award was rendered may vacate or modify the award upon application by any party, 9 U.S.C., §§ 10(a) and 11.  The arbitration hearing was held at an office located at 1384 Broadway, New York, New York 10006, and the award was issued from that office.

18.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 and 9 U.S.C. §§ 10(a) and 11.

## FACTS

19.     ICA writes workers' compensation insurance for professional employment organizations.  ICA purchased three layers of excess reinsurance cover from certain Lloyd's underwriters for a period of 12 months commencing December 31, 2004.  Gresham brokered the placement of the treaties.

20.     The First and Second Layers are both led by Atrium Syndicate 0570.  Faraday serves as the lead underwriter for the Third Layer.

21.     In or about March 2011, ICA gave notice to the First and Second Layers of two workers' compensation claims filed by Alan Kringel and Leon Arnold.  ICA did not provide notice to the Third Layer.  ICA's claims for alleged damages at the time were well below the $5 million attachment point for the Third Layer.   To date, upon information and belief, ICA's claimed damages have still not implicated the Third Layer.

- 5 -

22.     ICA subsequently waited until November 2013 to actively pursue reimbursement and, even then, only from the First and Second Layers.  In or around January 2014, the First and Second Layers declined coverage for the two underlying claims.

23.     Faraday and the Third-Layer Underwriters have never, at any time, received proper notice from ICA of the claims at issue under the Treaty.  *See* Faraday Aff., Exh. "B", ¶ 5. Faraday and the Third-Layer Underwriters have never received any status reports or requests for reimbursement from ICA on the underlying claims at issue, nor have they received any loss runs or proof of loss amounts from ICA supporting its claim for alleged damages.  In turn, the Third-Layer Underwriters have never issued any position to ICA as to whether coverage was available under the Treaty for the underlying claims at issue.  *Id*.

24.     On or about December 23, 2014, ICA sent a demand for arbitration letter via Federal Express to: (1) Gresham; (2) Clive Harris of Atrium; and (3) Ted Davey of RFIB.  *See* Exhibit "C".

25.     However, Gresham was placed into liquidation in or around May 2010, over four years before ICA's demand for arbitration was made.  By then, ICA had known for (at least) three years that Gresham was defunct, making it imperative for ICA to ensure that service of the arbitration demand was actually received by the appropriate underwriters.  However, ICA never amended the Treaty to designate a new intermediary.  There is also no evidence of ICA ever retaining a Lloyd's registered broker to act on its behalf, which is typically how a reinsured such as ICA communicates with Lloyd's underwriters.  *See* Faraday Aff., Exh. "B", ¶ 4.

26.     Mr. Harris of Atrium is the lead underwriter for the First and Second Layers.  ICA and Mr. Harris had been dealing with each other in the context of the coverage issues involving the First and Second Layers since 2011.

- 6 -

27.    Mr. Davey, who used to work for Gresham, but has never been an authorized representative of the Third Layer, was apparently being used by Atrium to communicate with ICA regarding the coverage dispute that led to the arbitration demand.  The Third Layer was never a party to this coverage dispute.

28.    ICA's demand for arbitration was specifically directed to the First and Second layers.  The letter makes only a single reference to the Third Layer, in which it demands arbitration under the Treaty (in parentheticals and a footnote) "should the Claim rise to that level".  *See* Exhibit "C".

29.    Faraday, who is not listed as an addressee, was never properly served with this arbitration demand.  *See* Faraday Aff., Exh. "B", ¶ 8.

30.    The arbitration apparently proceeded for approximately ten months without any specific input or involvement whatsoever from Faraday and the Third-Layer Underwriters. Faraday was deprived of any opportunity to provide its consent with respect to the selection of a party-appointed arbitrator, in violation of its rights under the arbitration clause (Article 24) of the Treaty.  *Id*. at ¶ 9; Exh. "A".

31.    Faraday also had no involvement in agreeing to the retention of Timothy Stalker, the counsel who represented the First and Second Layers, in contravention of Lloyd's claim scheme protocols.  *Id*.

32.    Additionally, Faraday, on behalf of the Third-Layer Underwriters, was denied the opportunity to agree or provide input on: (1) the procedures to be used in connection with the arbitration; (2) any response/answer to the causes of action asserted by ICA in its arbitration demand; (3) the nature and extent of any discovery; and (4) the strategy to be implemented in

connection with the arbitration, including but not limited to, identity of witnesses, exhibits, and any special defenses. *Id*. at ¶ 10.

33.     The arbitration proceeded to hearing and the Award was subsequently issued against all three layers on October 19, 2015.  With respect to the Third Layer, the Award was contingent upon ICA's alleged damages for the Kringel claim exceeding $5 million, which, upon information and belief, has not occurred.  A redacted copy of the Award is attached hereto as Exhibit "D".

34.     It was only after the Award was issued that Faraday received proper notice of the arbitration, after which it took immediate steps to challenge the Award, including submitting a letter to the Panel dated December 3, 2015.  A copy of this letter is attached hereto as Exhibit "D".

## STATUS OF PROCEEDINGS

35.     As soon as Faraday and the Third-Layer Underwriters became aware of the Award, by letter dated December 3, 2015, they objected to the Award on the basis that the Third-Layer Underwriters never received notice or service of the underlying losses or the arbitration.  Five weeks later, on January 8, 2016, ICA provided a response.  A reply on behalf of the Third-Layer Underwriters was submitted on January 15, 2016.  To date, the Panel has not ruled on these objections.

## THE AWARD MUST BE VACATED OR MODIFIED BECAUSE THE THIRD-LAYER UNDERWRITERS WERE DEPRIVED OF THEIR DUE PROCESS RIGHTS AND BECAUSE THE PANEL ISSUED AN AWARD AGAINST A PARTY AND MATTER NOT PROPERLY BEFORE IT

36.     There are several grounds upon which the Court should grant vacatur in this case.  First, the lack of service of the arbitration demand and resulting deprivation of Underwriters' due process rights to meaningfully participate in the arbitration in and of itself warrants vacatur of

AM 56928577.1

the Award.  All parties in an arbitration proceeding are entitled to notice and an opportunity to be

heard.  "If this procedural due process requirement is not met," courts in this District "will not

hesitate to vacate the award."  *See, e.g.*, *Kaplan v. Dunhill, Inc.*, No. 96-0258, 1996 WL 640901,

\*5 (S.D.N.Y. Nov. 4, 1996).  Such principles of fundamental fairness and due process are

embodied in the FAA.  *See* 9 U.S.C. §10(a)(3) (award may be vacated where arbitrators

"refus[ed] to hear evidence pertinent and material to the controversy").

    37.    The Award should be vacated under Section 10(a)(3) because the Panel failed to

provide the Third-Party Underwriters with the ability to be heard and therefore deprived them of

a fundamentally fair hearing.  To date, the Panel has not ruled on the Third-Party Underwriters'

objections to the Award.  Absent any future ruling by the Panel allowing the Third-Party

Underwriters an opportunity to present their case, the Panel is "guilty of misconduct in …

refusing to hear evidence pertinent and material to the controversy…."  9 U.S.C. § 10(a)(3).

    38.    In addition, arbitration was demanded against the Third-Layer Underwriters

"should the [Kringel] Claim rise to that level."  *See* Exhibit "B".  In other words, ICA's demand

for arbitration against the Third-Layer Underwriters was contingent upon the underlying Kringel

claim impacting the $5 million excess of $5 million layer.  To date, upon information and belief,

ICA's claim for alleged damages for the Kringel claim has not reached the Third Layer.

Accordingly, the Award as it pertains to the Third-Layer Underwriters is premature.

    39.    Because the Panel exceeded its authority by issuing an Award against a party and

involving a matter never properly brought into these proceedings in the first instance, the Award

should be vacated under Section 10(a)(4) of the FAA.  The Award can also be modified or

corrected to the extent that it pertains to the Third-Layer Underwriters because "the arbitrators have awarded upon a matter not submitted to them".  *See* 9 U.S.C. § 11(b).[2]

40.     In the instant case, there were several means, in the Treaty or otherwise, by which ICA could have properly effectuated service of the arbitration demand upon the Third Layer.  Serving the long-defunct Gresham was certainly not one of them.  ICA also chose not to adhere to the "Service of Suit" clause of the Treaty, which designates agents for service.  Additionally, there is no evidence of any efforts on the part of ICA to identify (let alone notify) Faraday as a proper recipient of the arbitration demand for the Third Layer.

41.     Where, as here, there are many reinsurers and only one reinsured, it is customary at Lloyd's for the party in ICA's shoes to deal with only the lead underwriter.  Rather than having to serve each syndicate or underwriter individually through arduous Hague Convention procedures, ICA need only to have informed Faraday and/or its designated agents of matters relating to the operation of the Treaty, but failed to do so.

42.     The instant arbitration apparently proceeded for approximately ten months without any specific input or involvement whatsoever from Faraday and the Third-Layer Underwriters.

43.     Had Faraday and the Third-Layer Underwriters received proper service of the arbitration demand, the arbitration would have looked markedly different.  Faraday, on behalf of the Third Layer, would have proceeded to raise and maintain certain defenses in the arbitration

---

[2]     Because the Third-Layer Underwriters are foreign insurers domiciled in the United Kingdom and other foreign states, the Convention governs the Award.  Article V of the Convention specifies seven grounds for refusal of recognition of an arbitration award, one of which is that a party "was not duly notified of the appointment of the arbitrator or the arbitration procedure to be followed or was unable, for any other reason, to present his case."  Article V(1)(b).  Courts in New York have interpreted this ground to imply the forum state's standards of due process.  *See Parsons & Whittemore Overseas co. v. Societe Generale*, 508 F.2d 969, 975-76 (2d Cir. 1974).  Additionally, under the "Controlling Law" clause (Article 25) of the Treaty, New York law governs this dispute.  Section 7511 of the CPLR provides grounds for vacating an award for "a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate."  N.Y. C.P.L.R. § 7511.

unique to that layer, such as: (1) lack of notice of the underlying losses at issue; and (2) the expiration of the 84-month sunset provision contained in the commutation clause of the Treaty. In essence, this provision terminates the Third-Layer Underwriter's liability for claims not reported by December 31, 2012, such as the underlying claims at issue. *See* Faraday Aff., Exh. "B", ¶ 11.

44.     The Third-Layer Underwriters also would have attempted to take discovery regarding ICA's claims for alleged damages as well as have offered additional documentary evidence and/or witnesses at the arbitration hearing to support the position that there was no coverage for these losses under the Treaty, including but not limited to, evidence in the placing slip that the Treaty was underwritten by the Workers' Compensation Clash Consortium. *Id*. at ¶¶ 11-12; Exh. "E". A Clash treaty provides coverage only where there are two or more claims arising out of the same "loss occurrence" or event. ICA has already admitted that the underlying claims at issue arose from separate loss occurrences.

WHEREFORE, Petitioners respectfully request that the Court issue an Order to:

(1)     Vacate or modify the Award as it pertains to the Third-Layer Underwriters;

(2)     Remand the arbitration proceedings to a new tribunal;

(3)     In the alternative, should the Court find that the Third-Layer Underwriters are bound by the Award, vacate the Award for the reasons set forth in the Petition to Vacate Arbitration Award filed by the First and Second Layer Underwriters in the related proceedings in this District entitled *Certain Underwriting Members at Lloyd's of London v. Insurance Company of the Americas*, No: 1: 16-CV-00323;

- 11 -

(4)     Award Third-Layer Underwriters attorneys' fees and costs in bringing this

motion; and

(5)     Award such further relief as may be just and equitable.

Dated: New York, New York
          January 18, 2016

                                        *s/ Joseph N. Froehlich*
                                        Joseph N. Froehlich (JF 5221)
                                        LOCKE LORD LLP
                                        200 Vesey Street, 20th Floor
                                        New York, NY  10281-2101
                                        (212) 415-8600

                                        *Attorneys for Petitioners*
                                        *Certain Underwriters at Lloyd's, London*
                                        *Subscribing to Treaty No. 0274/04*

AM 56928577.1