Philip J. Loree Jr. (PL-2213)
LOREE & LOREE
830 Third Avenue
Fifth Floor
New York, New York 10022
(646) 253-0560
(516) 627-1720 (alternative phone no.)
(516) 941-6094 (mobile)
Fax: +1 (800) 627-3118
PJL1@LoreeLawFirm.com

ATTORNEYS FOR RESPONDENT
INSURANCE COMPANY OF THE AMERICAS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CERTAIN UNDERWRITING MEMBERS AT LLOYDS OF
LONDON,

                     Petitioner,            16-CV-323 (VSB)

-v.-

INSURANCE COMPANY OF THE AMERICAS,

                     Respondent.

------------------------------------------------------------x
CERTAIN UNDERWRITING MEMBERS AT LLOYDS,
LONDON SUBSCRIBING TO TREATY NO. 0272/04

                     Petitioner,            16-CV-374 (VSB)

-v.-

INSURANCE COMPANY OF THE AMERICAS,

                     Respondent.

------------------------------------------------------------x

**CERTIFICATION OF ARBITRATOR RICARDO RIOS**

Pursuant to 28 U.S.C. § 1746, I, Ricardo Rios, certify and state under penalties

of perjury as follows:

1. I am a resident of Queen Creek, Arizona, where I have resided since 2010. I have been a salaried employee of Insurance Company of the Americas ("ICA") since 2003, working out of offices in New York until 2010, and then subsequently working in Arizona. I have held the positions of Treasurer since January 4, 2011; Secretary since April 24, 2012, and Director since December 5, 2012. Under the bylaws of ICA, the Treasurer fulfills the role of Chief Financial Officer. Other than my salaried position, which does not have any bonus or other variable component based on the performance of ICA, I have never had any financial interest in ICA. I am not and have never been a shareholder of ICA.

2. I started performing accounting work for Vensure Employer Services ("Vensure") on a part-time consultant, independent contractor basis, on August 3, 2015. Other than that, I have never had any affiliation with Vensure. I do not have and have never had any financial interest in Vensure. I am not and have never been an officer, director, employee, or shareholder of Vensure.

3. Except where otherwise indicated, I have personal knowledge of the facts and circumstances set forth in this Certification, which I submit in support of ICA's cross-motions to confirm the arbitration award at issue in the captioned, consolidated proceedings.

4. The following persons are officers and/or directors of ICA:

| Name | Position |
|---|---|
| Gary Hirst | Chairman, Director |
| Ricardo Rios | Treasurer, Secretary and Director |

| | |
|---|---|
| John Greenwood | Director |
| Matthew Nordgren | Director |
| Hugh Dunkerley | President, Director |

5. I am familiar with the reinsurance arbitration proceedings that took place between Certain Underwriting Members at Lloyds London (the "Arbitration"), which resulted in an arbitration award in favor of ICA (the "Award"), and which, I understand, is the subject of the captioned proceedings.

6. ICA appointed Alex J. Campos as its party-appointed arbitrator in that arbitration. I had no involvement in the making of this appointment and I had no involvement in the decision to make the appointment of Mr. Campos as the ICA party arbitrator.

7. I first met Alex Campos in 2008. I was working for ICA in New York, and I applied for a job with an insurance company based in Atlanta. The company at which I interviewed was an auto insurance company, and had no connection to Vensure or to ICA. I flew to Atlanta to interview, and while in Atlanta I was introduced to Mr. Campos. I was offered a position, but declined it, and decided to stay with my position at ICA in New York. I have never disclosed this interview to the Chairman of ICA, Gary Hirst, until today. I did not establish any ongoing relationship with Mr. Campos and I did not stay in contact with him.

8. I was not involved in the initial stages of the arbitration, including the selection of arbitrators and the organizational meetings. Until the hearing itself, my only involvement in the arbitration was providing documents in response to Underwriters' discovery requests. From the commencement of the arbitration, I had no

communication with Alex Campos until he called me at the beginning of August and offered me a part-time consulting position. On that call, he told me that the CFO of Vensure had left, and the company urgently needed someone with insurance accounting experience to assist on a temporary, part-time basis with the financials. I accepted the assignment.

9. I had no communications with Mr. Campos outside the presence of both parties' attorneys during the period from the end of discovery until after the Panel made and delivered the Award.

10. The Underwriters have commented that During Day 3 of the arbitration, ICA placed claim notes into the record, and that my name appeared 5 times. It should be noted that I was never involved in the claims administration process, except for issuing checks as ordered by the claims adjusters, and that all five references to "Rios" in the claims notes are from three emails from a claims adjuster informing me, as Treasurer, of a problem with checks that ICA had issued – one check that the adjuster was requesting to be voided and two missing checks.

11. It was not intended by ICA that I would testify at the arbitration hearing. The Umpire, however, asked Mr. Hirst whether payments had been made to certain brokers in 2002-2005. Mr. Hirst did not know, and the Umpire said that he would like to ask me the same questions. I was sworn and asked the same questions, and I answered that I also had no knowledge of any such payments. This questioning was completely unexpected. I was not offered as a witness for ICA, and there was never any direct or cross examination of me.

12. My part-time, independent contractor work for Vensure commenced in August 2015, and although it was intended to be temporary, it continues today

because Vensure has not found a replacement CFO yet. I have performed many of the functions that were previously performed by the CFO of Vensure, and so most Vensure employees consider me to be the acting CFO. I have not, however, been appointed as CFO or as any other officer of Vensure.

13. I live in Queen Creek, Arizona, and Mr. Campos lives in Atlanta, Georgia. Although I now speak by telephone with Mr. Campos regarding the financial affairs of Vensure, and I have met with him when he has visited the offices in Arizona, I primarily interact with the 60 employees of Vensure who live and work in Arizona, especially the Chief Operating Officer of Vensure, who works out of Vensure's offices in Mesa, Arizona, and who manages both consultants and employees in Arizona, and who runs the day-to-day operations of Vensure.

14. My independent contractor relationship with Vensure is not and never has been contingent or conditioned in any way on the outcome of the Arbitration or on the outcome of the Federal Arbitration Act litigation relating to the Award. I do not have, and never had, any reason to believe that my independent contractor relationship with Vensure would have been any different had the Panel decided to make a different Award from the one it made.

15. My independent contractor work for Vensure is completely unrelated to my employment with ICA. ICA was not involved in arranging for me to provide accounting consulting services to Vensure.

16. To the best of my knowledge, neither Vensure nor Mr. Campos – nor any entity or person affiliated with either Vensure or Mr. Campos – has or ever had any financial or personal interest whatsoever in ICA or in its parent, First Florida Equity Holdings, Inc.

17. To the best of my knowledge, neither Vensure nor Mr. Campos – nor any entity or person affiliated with either Vensure or Mr. Campos – has, or ever had, any interest in the outcome of the Arbitration.

18. ICA is not, and has never been, a member of any group of companies affiliated with Vensure or Mr. Campos. ICA is not, and has never been, affiliated with any company owned, controlled, managed or otherwise affiliated with Mr. Campos.

19. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct.

Executed on:   April 23, 2016
               Queen Creek, Arizona

_____
Ricardo Rios